IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CORY SYLVIA,

    *Plaintiff,*

vs.

Case No. 13-02534-EFM

JAMES L. WISLER, DAVID TREVINO and
XPRESSIONS, L.C.,

    *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendant David Trevino's Motion for Summary Judgment on Plaintiff's Tort Claim (Doc. 90). Since there is no genuine dispute as to any material fact pertinent to Trevino's motion, and since Trevino did not proximately cause Cory Sylvia's injuries, Trevino is entitled to judgment as a matter of law. For those and the following reasons, the Court grants Trevino's Motion for Summary Judgment.

### I.     Factual and Procedural Background[1]

Defendants James Wisler and David Trevino are attorneys who represented Sylvia. Defendant Xpressions is the entity previously named the Law Offices of James Wisler, L.C. before

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts in the light most favorable to the non-moving party.

Wisler retired from the practice of law. This matter stems from Wisler and Trevino's representation of Sylvia on a wrongful discharge claim.

Sylvia alleges that Goodyear Tire & Rubber Company ("Goodyear") wrongfully terminated him on May 9, 2009. He received a right to sue letter from the Equal Employment Opportunity Commission on March 24, 2011. On March 28, Sylvia retained Wisler and Trevino's firm to represent him on any claims he may have against Goodyear. That day, Sylvia signed a contract that stated:

> Cory Sylvia has been wrongfully discharged due to disability discrimination and [Family and Medical Leave Act] violation/retaliation and Workers Compensation retaliation from Goodyear Tire and Rubber on or about May 9, 2009. The firm will file suit in federal court in Kansas on one or more of these claims.

On May 5, 2011, Wisler and Trevino filed a complaint on Sylvia's behalf in the United States District Court of Kansas ("Case 1"). The complaint set forth three claims: (1) improper interference in violation of the Family and Medical Leave Act ("FMLA"); (2) discrimination in violation of the Americans with Disabilities Act ("ADA"); and (3) discrimination in violation of the Kansas Act Against Discrimination. While not presented as a separate claim, the complaint specifically stated: "At the time he was terminated, Plaintiff [Sylvia] had workers' compensation issues pending with Defendant [Goodyear]." After the firm filed the complaint, Sylvia called Wisler and asked why a workers' compensation retaliation claim was not included. Sylvia maintains that Wisler assured him over the phone that the other two claims would be filed later.[2]

Sometime after Sylvia had retained Wisler and Trevino, their firm began the dissolution process. Sylvia elected to have Wisler continue to represent him on Case 1, so Trevino withdrew

---

[2] Wisler controverts this statement and Trevino does not controvert it for the purposes of this motion only.

on July 22. Also around this time, Sylvia received a favorable decision from the Social Security Administration ("SSA") awarding him disability benefits under the Social Security Act. Because of this decision, Wisler suggested that they move to dismiss the case without prejudice. On July 26, Wisler moved to dismiss the complaint against Goodyear without prejudice. The court granted that motion. Wisler then sent a letter to Sylvia, explaining he could not in good faith argue that Sylvia deserved lost wages since Sylvia was collecting disability benefits from the SSA.

In November, Sylvia hired different counsel and filed a new case against Goodyear ("Case 2"). The new complaint alleged wrongful discharge based on four claims: (1) interference in violation of the FMLA; (2) retaliation in violation of the FMLA; (3) wrongful discharge in violation of the Employee Retirement Income Security Act; and (4) disability discrimination in violation of the ADA. The Court dismissed Sylvia's ADA claim, finding it was time-barred. Sylvia ultimately settled Case 2 for $12,000.

Sylvia filed the complaint against Wisler and Trevino in this case on October 16, 2013. Initially, he asserted claims of both legal malpractice and breach of contract. Wisler and Trevino each filed motions to dismiss. After determining that the case sounded more in contract than tort, this Court granted the motions to dismiss the malpractice claim and denied the motions to dismiss the breach of contract claim. Sylvia then filed an amended complaint naming Xpressions as an additional defendant in the breach of contract claim. Defendants moved for summary judgment on the remaining breach of contract claim, which the Court granted on October 10, 2015.

Upon appeal, the Tenth Circuit upheld the Court's ruling on the breach of contract claim but overturned the Court's dismissal of the legal malpractice claim, holding that the cause of action

is properly classified as a tort. After re-briefing the issues involving the legal malpractice claim, Trevino now moves for summary judgment on Sylvia's tort claim.[3]

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[5] The moving party bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] To survive summary judgment, the non-moving party's evidence must be admissible.[9] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[10]

---

[3] Defendants Wisler and Xpressions are not moving for summary judgment at this time.

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

[9] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Because this is a diversity case, the Court will apply "federal procedural law and the substantive law that would be applied by the forum state."[11] Choice-of-law rules are substantive for purposes of federal diversity jurisdiction.[12] Since Kansas is the forum state, the Court must apply Kansas choice-of-law rules for torts. Under Kansas choice-of-law rules, the *lex loci delicti* doctrine requires the Court to apply the law of the state where the wrong occurred.[13] Where the wrong occurred is where the injury was suffered.[14] Here, Sylvia alleges that Trevino's tortious conduct and Sylvia's resulting injury occurred in Kansas. Thus, Kansas law governs Sylvia's tort claim.

Under Kansas law, "in order to prevail on a claim of legal malpractice, a plaintiff is required to show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage."[15] "In addition to those four elements, to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error."[16] Particularly relevant to this motion, "causation in a claim of professional malpractice is determined according to the same principles of proximate cause governing any negligence

---

[11] *Evans v. Orion Ethanol, Inc.*, 2011 WL 2516929, at *1 (D. Kan. 2011) (citing *Burnham v. Humphrey Hosp. Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005)).

[12] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941).

[13] *Ling v. Jan's Liquors*, 237 Kan. 629, 634 (1985).

[14] *Id*.

[15] *Canaan v. Bartee*, 276 Kan. 116, 120 (2003) (quoting *Bergstrom v. Noah*, 266 Kan. 847, 874 (1999)).

[16] *Id*. (citing *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 249 (1982)).

action."[17] Proximate cause is "that cause which in [a] natural and continuous sequence, unbroken by an *efficient intervening cause*, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act."[18]

### III. Analysis

Trevino argues that he is entitled to judgment as a matter of law under two theories. First, Trevino argues that his omissions did not proximately cause Sylvia's injury. Second, Trevino argues that the Adequate Alternative Remedy doctrine would have precluded Sylvia's recovery under a workers' compensation retaliation claim. The parties do not controvert the facts underlying Trevino's argument that he was not the proximate cause of Sylvia's injuries.[19] Because the Court concludes that there is no proximate cause between Trevino's actions and Sylvia's injuries, the Court will not consider Trevino's arguments pertaining to the adequate alternative remedy doctrine.

Under his first theory, Trevino argues that Sylvia waived the right to bring a workers' compensation claim within the statute of limitations and that this waiver constituted an efficient intervening cause that negates proximate cause and relieves Trevino of liability. Specifically, Trevino alleges that Sylvia waived the retaliation claim by either voluntarily dismissing Case 1 without amending the complaint or failing to bring that claim in Case 2. For the purposes of this motion, the Court need not, and cannot, determine whether Wisler, or Sylvia's subsequent counsel

---

[17] *Comeau v. Rupp*, 810 F. Supp. 1172, 1177 (D. Kan. 1992) (internal quotations and citations omitted).

[18] *Id*. (emphasis added).

[19] The parties dispute certain facts that pertain to other elements of a legal malpractice case, such as duty or breach. The parties do not dispute the facts that pertain to whether Sylvia or his subsequent counsel waived a right to bring a retaliation claim by failing to amend the original complaint to include such a claim before voluntarily dismissing Case 1 or initiating Case 2.

in Case 2, *should* have respectively amended the complaint or brought a workers' compensation relation claim. It is enough that one of these two parties *could* have acted; since neither did, Trevino alleges that either omission was an efficient intervening cause.

Sylvia alleges that Wisler acted against his wishes in voluntarily dismissing Case 1. That potential discrepancy is irrelevant to this motion, however, because Trevino ceased to represent Sylvia before Case 1 was voluntarily dismissed. Additionally, K.S.A. § 60-518 permits a party to re-file an action within six months if it was originally brought within the statute of limitations and subsequently voluntarily dismissed after the statute of limitations. Sylvia failed to bring a retaliation claim in Case 2, which was otherwise filed within the six-month window. Trevino argues that Sylvia's failure to file a workers' compensation retaliation claim in Case 2 constitutes the second possible efficient intervening cause.

Trevino's arguments hinge on whether a theoretical amendment by Sylvia adding a workers' compensation retaliation claim would have related back to the original complaint for purposes of the statute of limitations. If an amendment would not have related back, then Sylvia could not have waived his right to bring a retaliation claim. As such, the Court will first address whether an amended complaint would have related back. If an amended complaint would have related back, then the Court will determine if an efficient intervening cause relieves Trevino of liability.

**A.      An Amended Complaint Adding a Workers' Compensation Retaliation Claim would have Related Back to the Original Complaint**

*1.      The Original Complaint was Brought Within the Statute of Limitations but Failed to State a Prima Facie Case for Workers' Compensation Retaliation*

Trevino first argues that the original complaint stated a prima facie case for retaliation. It is uncontroverted that the statute of limitations for a workers' compensation retaliation claim ran on May 8, 2011, two years after Goodyear fired Sylvia. It is also uncontroverted that the original complaint was filed on May 5. Therefore, if the original complaint stated a facially plausible claim for workers' compensation retaliation, then that claim was brought within the limitations period. The elements of a prima facie case for workers' compensation retaliation are: (1) The plaintiff filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers' compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.[20]

In this case, the original complaint did not state a prima facie case for workers' compensation retaliation. While the complaint did not have to clearly allege a workers' compensation retaliation claim, it needed to allege enough facts to establish the elements of such a claim. The complaint did state: "At the time he was terminated, [Sylvia] had workers' compensation issues pending with [Goodyear]." However, nowhere else were the workers' compensation claims mentioned. Furthermore, no facts were alleged that attempted to establish a link between Sylvia's workers' compensation claims and Goodyear's termination of his employment. While the complaint might have contained enough facts to establish a workers' compensation retaliation claim for the first three elements, it lacked factual allegations for the fourth and final element, causation. As a result, the original complaint failed to state a prima facie case for workers' compensation retaliation.

---

[20] *Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 554 (2001).

2.  *An Amended Complaint adding a Workers' Compensation Retaliation Claim would have Related Back to the Original Complaint*

Although the original complaint did not state a prima facie case for workers' compensation retaliation, an amended complaint including a workers' compensation retaliation claim would have related back to the original complaint, thereby complying with the statute of limitations. Federal Rule of Civil Procedure 15(c)(1) established the relation-back doctrine, stating: "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[21]  This provision is intended to give the defendant fair notice that the litigation is arising out of a specific factual situation.[22]  When an amendment is based on different facts, transactions, and occurrences, a claim in an amended pleading will not relate back.[23] Courts are more cautious in applying the relation-back doctrine to "[a]mendments that go beyond the mere correction or factual modification of the original pleading and significantly alter the claim or defense alleged in that pleading."[24]  Such amendments typically have "a substantial impact on the merits of the case and may require the opposing party to prepare the case a second time."[25]

Although not expressly mentioned in the relation-back rule, courts also determine whether the opposing party has been put on notice regarding the claim added by the amended pleading.[26]

---

[21] Fed. R. Civ. P. 15(c)(1).

[22] 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497 (3d ed. 1998).

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id*.

If the alteration is so severe that the defendant was not given adequate notice of the conduct, transaction, or occurrence that underlies the new claim, then the amendment will not relate back.[27] "Relation back does not offend the notice policies underlying a statute of limitations if the original complaint fairly discloses the general fact situation out of which the new claims arise."[28] Amendments will relate back if they "only flesh out the factual details, change the legal theory, or add another claim arising out of the same transaction, occurrence or conduct."[29] Amendments will not relate back if they are "based on entirely different facts, transactions, and occurrences."[30] "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading."[31]

Sylvia cites to *Hernandez v. Valley View Hospital Association*[32] in support of his argument. In that case, the Tenth Circuit held that an amended complaint adding a claim for Title VII retaliation did not relate back to the original complaint because the "retaliation claim raised new and discrete allegations that were not pled in [the] original complaint."[33] The original complaint in *Hernandez* alleged racial discrimination resulting in constructive discharge. The underlying facts did not include the defendant's termination but instead revolved around discriminatory

---

[27] *Id*.

[28] *Marsh v. Coleman Co.*, 774 F. Supp. 608, 612 (D. Kan. 1991) (citations omitted).

[29] *Id*.

[30] *Id*.

[31] *Spillman v. Carter*, 918 F. Supp. 336, 340 (D. Kan. 1996) (quoting Wright & Miller, *Federal Practice and Procedure* § 1497).

[32] 684 F.3d 950 (10th Cir. 2012).

[33] *Id*. at 962.

actions by the defendant's employer. The court determined, and the parties did not contest, that a retaliation claim would have added new and discrete facts. As such, the Tenth Circuit held that an amended complaint would not have related back to the original complaint.[34]

The Tenth Circuit in *Hernandez* also held that the complaint did not put the defendant on notice of a potential retaliation claim.[35] In her filing to the EEOC, the defendant stated that she *might* file a retaliation claim; however, the defendant omitted this statement from the complaint. The court stated that the *complaint* must state facts to put a defendant on notice, not a preliminary administrative filing like the EEOC complaint. Since the complaint omitted facts and allegations pertaining to retaliatory discharge, the court concluded that the defendant was not on notice of a retaliation claim.

The facts of this case differ from those of *Hernandez* in several ways. First, the addition of a workers' compensation retaliation claim would not have required Sylvia to plead new and discrete facts that differed in time and type from those alleged in the original complaint. Unlike in *Hernandez*, every other claim in Sylvia's original complaint stems from Goodyear's termination of Sylvia, not discriminatory behavior during Sylvia's employment. The complaint explicitly mentions, and indeed revolves around, Goodyear's termination of Sylvia; a retaliation claim would also have stemmed from that termination. Furthermore, the complaint states: "At the time he was terminated, [Sylvia] had workers' compensation issues pending with [Goodyear]." This language, although insufficient to state a prima facie case for retaliation, nevertheless establishes the factual

---

[34] *Id.*

[35] *Id.*

basis for the allegation that Goodyear terminated Sylvia in retaliation for taking workers' compensation.

The Court concludes that an amended complaint asserting a workers' compensation retaliation claim would have arisen out of the same conduct, transaction, or occurrence alleged in the original complaint. Sylvia would not have had to allege new and discrete facts to support a claim for workers' compensation retaliation. Although falling short of stating a prima facie case for retaliation, the complaint nevertheless established the factual background for such a claim. An amendment could have more thoroughly fleshed out facts necessary to state a workers' compensation retaliation claim. Finally, an amendment would not have substantially impacted the merits of the case, nor would it have required Goodyear to prepare the case a second time. As a result, the Court concludes that an amended complaint would have arisen out of the facts alleged in the original complaint.

The Court also concludes that Sylvia's original complaint sufficiently put Goodyear on notice of a potential workers' compensation retaliation claim. Unlike in *Hernandez*, Trevino included in the actual complaint the statement that workers' compensation claims were pending. That statement sufficiently alleged a factual foundation that put Goodyear on notice of possible workers' compensation retaliation claims in an amended complaint. An amended complaint would not have unfairly surprised Goodyear or forced it to defend new or discrete factual allegations. On the contrary, the information Goodyear gathered to defend the other claims would have been the same or similar information necessary to defend a subsequent retaliation claim. As such, the original complaint put Goodyear on notice of a potential workers' compensation retaliation claim.

**B.    Subsequent Attorneys' Actions Constitute an Efficient Intervening Cause that Relieves Trevino from Liability for Sylvia's Injuries**

Finally, Sylvia argues that even if an amended complaint would have related back, Trevino's failure to amend makes him the proximate cause of Sylvia's injuries, notwithstanding the fact that Sylvia's subsequent attorneys could have amended the complaint. The Court disagrees with Sylvia's conclusion for the following reasons.

In *Knight v. Myers,*[36] the Kansas Court of Appeals held that an "attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action."[37] In that case, the client (Knight) asked his first attorney (Myers) to file a counterclaim. Myers failed to file the counterclaim before ending his representation of Knight. Knight then retained other attorneys, none of whom fired the counterclaim. Eventually, the statute of limitations expired. While Myers *could* have brought the counterclaim within the statute of limitations, so could have Knight's subsequent attorneys. Under these facts, the court concluded that the actions of Knight's subsequent attorneys acted as efficient intervening causes and thus relieved Myers of liability for failing to bring the claim in the original complaint.

Sylvia relies on *Pizel v. Zuspann*[38] to support his argument. In that case, the Kansas Supreme Court held that an attorney was not relieved of liability to a client simply because the client retained subsequent attorneys who could have taken steps to prevent the injury. In *Pizel*, Charles Pizel retained Zuspann to establish a trust, but Zuspann negligently failed to continually

---

[36] 12 Kan. App.2d 469 (1988).

[37] *Id.* at 477 (internal citations and quotations omitted).

[38] 247 Kan. 54 (1990).

monitor the trust's enactment.[39] Particularly, Zuspann failed to clearly advise the trustees of their legal duties, he failed to record deeds of transfer to the trust, and he failed to file taxes or establish appropriate accounts for the trust. Because of those and other omissions, the trial court held that no valid trust existed. In the resulting legal malpractice action, the court noted multiple times that Zuspann's omissions derived from the *continuing* duty a lawyer has to a client regarding a trust.[40] Zuspann argued that, because he stopped representing Pizel prior to his death, Pizel's subsequent attorney could have taken the necessary steps to activate the trust. The court disagreed, holding that Zuspann's repeated failure to perform continuing duties made him liable to Pizel even though Pizel's subsequent attorney could have performed those duties.

The facts of *Knight*, rather than those of *Pizel*, are analogous to this case; therefore, the Court concludes that the law of *Knight* controls. In *Knight,* subsequent attorneys could have brought the counterclaim within the statute of limitations, but the plaintiff sued the defendant for failing to do so originally. Similarly, Sylvia here sues Trevino for injuries resulting from a failure to bring a claim within the statute of limitations.[41] Sylvia alleges that Trevino's failure to amend the complaint was the cause for his injuries; however, Sylvia's subsequent attorneys could have amended the complaint or otherwise brought a claim for workers' compensation retaliation in Case 2. Additionally, in *Knight,* the ultimate event giving rise to the Knight's cause of action was not Myers' failure to bring the counterclaim, but the subsequent attorneys' failure to *ever* bring it

---

[39] *Id*. at 62.

[40] *Id*.

[41] Although the statute of limitations for a workers' compensation retaliation claim ran while Trevino still represented Sylvia, an amended complaint would have related back. Therefore, it is the failure to amend rather than the failure to originally bring the claim that is relevant to this cause of action. Sylvia recognizes this fact, stating a claim against Trevino for his alleged failure to *amend* the complaint to include the retaliation claim.

within the limitations period. Similarly, the ultimate event giving rise to Sylvia's legal malpractice action was the *waiver* of the right to assert a workers' compensation retaliation claim. Although Trevino could have amended the complaint while he represented Sylvia, Sylvia's subsequent counsel ultimately decided not to. Because of these factual similarities, the holding in *Knight* controls this case.

Following the precedent in *Knight*, the Court concludes that Trevino cannot be held liable for failing to file a workers' compensation retaliation amendment because he stopped representing Sylvia and was replaced by other counsel before Sylvia voluntarily waived his right to file an amendment. As in *Knight*, subsequent attorneys represented Sylvia at the time Sylvia waived his right to bring a workers' compensation retaliation claim. To reiterate, Sylvia waived this right under either of the two following events, both of which occurred after Trevino stopped representing Sylvia: First, Sylvia voluntarily dismissed Case 1 without amending the complaint to include a claim for workers' compensation retaliation. Second, Sylvia failed to bring a workers' compensation retaliation claim in Case 2. Either event acts as an efficient intervening cause that nullifies proximate causation between Trevino's alleged negligence and Sylvia's injuries.[42]

The Court grants Trevino's Motion for Summary Judgment. There is no genuine dispute as to any material fact underlying the element of proximate causation. An amended complaint adding a workers' compensation retaliation claim would have related back to the original complaint. Since subsequent counsel failed to amend the complaint or otherwise bring the claim in another case, at least one other efficient intervening cause broke the chain of causation between

---

[42] Additionally, at the time Trevino ceased to represent Sylvia, no court order prohibited Sylvia from amending the original complaint.

Trevino and Sylvia. As a result, Trevino was not the proximate cause of Sylvia's injuries and is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Defendant David Trevino's Motion for Summary Judgment on Plaintiff's Tort Claim (Doc. 90) is **GRANTED** and David Trevino is terminated from this case.

**IT IS SO ORDERED.**

Dated this 27th day of March, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE